[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
This appeal, considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, is not controlling authority except as provided in S.Ct.R.Rep.Op. 2(G)(1).
The defendant-appellant, Paul G. Royal, appeals from his conviction for possession of cocaine in violation of R.C. 2925.11(A). The trial court sentenced Royal to two years of community control with the requirement that he either complete the River City drug rehabilitation program or spend six months in the program, whichever came first. In his single assignment of error, Royal contends that his conviction was against the manifest weight of the evidence. We disagree.
Two members of the Cincinnati Police Robbery Task Force testified that they were patrolling the downtown area in an unmarked vehicle when they saw a man, later identified as Paul Friarson, in the street, being yelled at by someone who was shaking his head. The antagonist, later identified as William Sanders, continued to engage Friarson in a heated conversation while constantly gesturing with his hands. Sanders then walked away from Friarson and approached a man, later identified as Royal, who was seated on a nearby fire hydrant. Friarson and Royal were observed by the police officers as they began to talk. The officers testified that Royal then pulled a plastic baggie from his pocket and handed it to Sanders, who handed it to Friarson. Friarson put the plastic baggie in his pocket and left.
Believing that they had just witnessed a drug transaction, the undercover officers signaled for a marked cruiser to stop Friarson. When he was stopped and searched, Friarson had a plastic baggie of crack cocaine in his left pocket. Shortly afterwards, the police arrested Sanders and took Royal into custody as he was leaving a carryout store. He had $370 in currency on him. When questioned about what he had handed Sanders, Royal replied that he had handed him "a pebble."
Sanders testified for the prosecution. Sanders acknowledged that he had already been convicted of possession of cocaine as a result of this incident. He testified that he had acted as middleman for the transaction after Friarson had asked him if he could obtain crack cocaine. He testified that he and Friarson had crossed the street together, and that he had approached Royal as he sat on the fire hydrant. According to Sanders, Royal took a piece of crack cocaine from his shoe and gave it to Sanders. Sanders testified that he then handed the crack cocaine to Friarson. Friarson gave Sanders $50, two twenty-dollar bills and a ten-dollar bill, which, Sanders testified, he then gave to Royal.
In his defense, Royal admitted that he had a prior felony drug record. He told the jury that he had been in and out of Talbert House and was currently attending classes at Narcotics Anonymous and Alcoholics Anonymous. He explained that he was on his way to rent a car. Because he had to change buses to get to the dealership, he decided first to visit his Uncle "You-Siff," who lived in Over-the-Rhine. Of the large amount of cash he was carrying, Royal testified that $80 was his, and that $300 was given to him by his girlfriend for the car rental. He explained that he knew Sanders as "Chilly-Willy," but had no intention of meeting him on that afternoon when Sanders came to him while he was sitting on the fire hydrant. He vehemently denied telling the police that he had given Sanders a pebble.
Friarson testified as a defense witness. He denied that he had contact with Royal that day. He testified that Sanders owed him money, which was why they were arguing on the street. Although the plastic baggie of crack cocaine was found in his pocket when he was arrested, Friarson testified that he received only a $20 bill from Sanders. He denied that he received the drugs from Sanders and recanted his prior statement to police that Sanders had given him the crack cocaine. His reason for implicating Sanders, he testified, was that he wanted "to put it get back on him * * * because every time I be around him, I get busted."
Royal argues on appeal that the state's witnesses were not believable. He contends that the testimony of the police officers was so similar that it suggested that they had rehearsed their stories. He emphasizes that Sanders's testimony conflicted with the account of the police officers in that he did not mention a plastic baggie, and that his testimony was generally incredible because, unlike the usual middleman, he received nothing for his efforts in finding a buyer.
Our review of the entire record fails to persuade us that the jury, acting as the trier of fact and resolving the various factual disputes in the testimony, clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See Tibbs v. Florida (1982), 457 U.S. 31, 102 S.Ct. 2211;State v. Thompkins (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541,546-547. The weight to be given the evidence and the credibility of the witnesses were primarily for the trier of fact to determine. State v.DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus. Moreover, the record contains substantial, credible evidence from which it could reasonably have been concluded that all elements of the charged offenses had been proven beyond a reasonable doubt. See Statev. Waddy (1991), 63 Ohio St.3d 424, 588 N.E.2d 819, certiorari denied (1992), 506 U.S. 921, 113 S.Ct. 338.
Therefore, the judgment of the trial court is affirmed.
Further, a certified copy of this Judgment Entry shall constitute the mandate, which shall be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Gorman, P.J., Hildebrandt and Winkler, JJ.